# JACKS VS. CHAFFIN et al.

1. COLLECTOR'S DEED:  *Uncertainty in description makes void.*
   A collector's deed which recites that a quarter section of land was offered for sale, and that B purchased 35 acres of it, and then conveys to him said land, is void upon its face for uncertainty.

2. SAME:  *Recital of survey of part sold.*
   If a collector's deed for land sold under chapter 128, Revised Statutes, be otherwise sufficient, a failure to recite in it the survey and return of the part sold, will not invalidate it; they may be shown *aliunde*. But, in the absence of any recital of a survey, or any evidence of it *aliunde*, the deed itself, describing nothing, is an absolute nullity.

3. TAX SALE:  *For territorial taxes.*
   There was no law in existence in 1847, authorizing the sale of lands for territorial arrearages of taxes.

4. TITLE BY POSSESSION:  *Statute limitations.*
   Possession of land during the full period of limitation, under such circumstances as would make a valid defense, amounts to an investiture of title, which may be actively asserted in all respects, as effectively as if acquired by deed. The continuity of possession has reference to the time the statute is running, and is not necessary after the bar has attached.

APPEAL from *Phillips* Circuit Court
Hon. J. N. CYPERT, Circuit Judge.
*Rose,* for appellant.
*Tappan & Hornor, contra.*

EAKIN, J.   Jacks, in September, 1875, sued Chaffin and others, to recover a tract of about thirty-five acres of land (less a few acres described by special metes and bounds), in the southwest quarter of section fourteen, in township two north, of range three east; claiming it in a square off the southeast corner.

He set forth his documentary evidences of title, and exhibited copies. They consist of two certificates of the county clerk; one, to show the collector's advertisement of the sale of delinquent lands, for taxes, to be made on the first of November, 1847, including said quarter section, which had been assessed for the taxes of twenty-one years; and the other, to show that, on the day appointed, thirty-five acres of said tract had been purchased by George Bond, for the taxes and penalties. Appended to the advertisement was a notice: That, "if a less quantity than the whole of any tract be sold, it will be surveyed off of the southeast corner of said tract. If less than the whole of any tract be sold, and more than one-half, it will be surveyed off the south side of the tract, so as to avoid the improvements, if possible to do so."

Then followed an exhibit of the collector's deed, reciting other usual matters, that at the sale George W. Bond bid the amount of taxes due on said quarter section, for thirty-five acres of the same, and that the time for redemption had expired. Whereupon, the collector conveyed to said Bond "the above described tract or parcel of land." There was no more definite description. Then followed exhibits of other conveyances, bringing down Bond's title to plaintiff. In one of them, dated February 5, 1855, the land is described as "thirty-five acres in the southeast corner" of said quarter section, without defining the shape as a square. No other deed in the chain contains a more definite description than did that of the collector, which is taken throughout as the basis of all.

Plaintiff charged that defendants held possession without right, and for a year and a half had unlawfully kept him out.

Defendants answered, denying the right of plaintiff, and

setting up their own claims, as all derived through mesne conveyances, from an original patent- from the United States, issued upon a military bounty warrant in 1823. They excepted to the documentary evidence of plaintiff; amongst other reasons, for the following: First, because the collector's deed to Bond does not describe the land set forth in the complaint; second, because it appears upon the face of the deed that thirty-five acres were sold off of, said quarter section; and does not appear that the county surveyor ever laid off said land, or made out, and returned to the collector, a certificate of survey; third, because the deed showed, on its face, the tax to be illegal—and failed in necessary recitals; and, fifth, because it showed that the sale was for the back taxes of a period of twenty-one years.

The first of these was overruled, and the second, third and fifth sustained. Both parties saved exceptions to the ruling.

Plaintiff then, by leave, filed an amended complaint, in which he set forth, as before, the circumstances of the purchase by Bond at tax sale, and the subsequent chain of title to himself; and alleged, in effect, that those under whom he claimed had been in the peaceable, adverse possession of the lands, so purchased, from the year 1848 to 1870. That, at the latter period, some of the defendants first begun to assert their claims; that the defendants now hold possession without right, and have for a year and a half unlawfully kept plaintiff out.

Defendants demurred to the amended complaint, because of general insufficiency; and, especially, because it showed that defendants were in possession, and did not allege that they acquired possession forcibly and illegally. The demurrer was sustained by the court. The plaintiff declined to amend, and the suit was dismissed.

Jacks vs. Chaffin et al.

Plaintiff moved for a new trial on the ground that the court had erred in sustaining the exceptions to the evidences of title filed with the complaint. This motion was overruled. The plaintiff brought the evidences offered, and the action of the court, upon the record by bill of exceptions, and appealed.

The act of 1875 prescribes a new and anomalous practice for the recovery of land; which accords with neither common law nor chancery practice, throughout; but is *sui generis*. It requires the plaintiff to set forth and exhibit, by copies, his evidences of title; and the defendant, in his answer, to set forth exceptions to any of the documentary evidences so filed.

The defendant must also exhibit, in like manner, the evidences upon which he relies, to which the plaintiff may except. The exceptions are passed upon by the court, and if any exception is sustained, to any documentary evidence, the same can not be used on trial; unless "the defect for which the exception is taken shall be cured by amended complaint." The practice, under this act, will be most easily harmonized with our general system by assimilating the record to one in chancery. The exhibits and exceptions thereto will thus become parts of the record, but not of the pleadings, which are still required to be sufficient of themselves. No motion for a new trial, nor bill of exceptions, will be considered necessary to bring to the notice of this court any error in ruling upon exceptions.

The defendants have saved their exceptions to the action of the court in overruling the first ground of their exceptions to plaintiff's evidence. The fourth need not be noticed, as it concerns only dower. But defendants do not now appeal, and it is necessary only to consider the exceptions that were sustained, against the exceptions of plaintiff.

It appeared from the face of the deed that thirty-five acres were sold off of the 160 acre tract; and did *not* appear that the county surveyor laid off the tract, and returned a certificate of survey to designate the land. The exception on this ground is to be considered in connection with the whole of the collector's deed, which is before us, and is clearly void, *upon its face*, for uncertainty. It recites that the quarter section was offered for sale, and that Bond purchased 35 acres of it, and conveys to him said land. That passes nothing, *proprio vigore*, and would give the plaintiff no right, in equity even, to have the deed reformed; without a showing *aliunde* of some matter by which a more definite intention than that expressed might be manifested.

The law then in force (*Revised Statute, chap. 128, sec. 78*), required, in case of the purchase of a part of a tract at a tax sale, that it should be laid off *in a square*, adjoining *one or other* of the corners of the tract, "so as not to include the improvement, if any, if it can be avoided," and directed the collector, in his advertisement, to state, "from what part of any tract," any portion less than the whole, which may be sold, shall be laid off. He was also directed (*sec. 91*) to specify in the certificate of purchase given to the buyer, "at what part of the tract the same shall be laid off," and, in the same certificate, to require the county surveyor, on the request of the purchaser, to lay off such tract by metes and bounds. If the lands should not be redeemed, it was made the duty of the collector, after the lapse of a year, on production of the county surveyor's return of the survey, in conformity with the requisition of such certificate, to execute a deed accordingly. (*Ib., sec. 95.*)

It is plain from the law, and the collector's notice, that the right of a purchaser to a square off the southeast quarter of any tract, did not become absolute on his bid for a

certain number of acres generally, and the failure of the former owner to redeem,—at least not to the extent of supplying a failure in the deed to define with certainty the shape and locality of the partial purchase. The legislature had not considered it sufficient to designate the figure of a square, even in a fixed corner,—although this court may judicially know that such a designation is as certain as anything in mathematics. It still required a survey by metes and bounds to be made—perhaps from some policy of notice and due information to such purchasers, and owners of main tracts, as might not have sufficient education to calculate the side of a square in yards, or rods, from a given area in acres, but who ought, nevertheless, to know, and be held to observe their true boundaries. Besides, the designation by the collector of the southeast corner as the one from which partial purchases were to be taken, was qualified, not only by the law, but the notice itself. It must not include improvements, if it could be avoided.

For this reason, also, a survey was important. If the deed itself had been certain, and had failed to set forth the survey and return, that, like any other material matter, might have been shown *aliunde* (*Bonnell v. Roane, 20 Ark., 114*), and the deed would not be invalid. But when the deed itself is so imperfect that, unaided, it would convey nothing at all at law, the want of some evidence or recital which might supply the requisite certainty, is obviously ground of exception. A recital of the survey and return would have been proper; and, if made, would have given certainty to the deed. If it had been shown by other documentary evidence, it might, at least, have given the plaintiff a vested right in equity. But in the absence of any recital of a survey, or any evidence of it *aliunde*, the deed,

itself, describing nothing, is an absolute nullity. The exception on the second ground was well sustained.

The third and fifth grounds may be considered together.

The right of the state to collect taxes which had accrued under the territorial government, is unquestionable. But it is a sovereign right, to be exercised under sovereign direction. Mere agents of the state, without express authority of law, have no right to collect them. There was no law in existence in 1847 authorizing the sale of lands for territorial arrearages of taxes. *Sec. 24, of chap. 128, of the Revised Statutes,* approved in 1838, applies only to prospective omissions.

Upon this, and the former ground, the court did not err in sustaining the second, third and fifth exceptions to the evidence filed with plaintiff's complaint. He did not then rely upon possession and the statute of limitations, and the question of admitting the deeds to stand as color of title was not presented by the parties.

In the amended complaint the land claimed is not described with any more certainty than was shown by the original complaint with its exhibits. There should have been a motion to make it more definite. It can not be said there was no cause of action. It was defectively stated, which is not ground of demurrer.

The demurrer admits that those under whom plaintiff claims, had been in the quiet, peaceable, continuous, adverse possession and enjoyment of the land claimed, from 1848 to 1870—that since the latter date the defendants had asserted a title, were in possession at the beginning of the suit, and wrongfully keeping plaintiff out. It is based upon the idea that the statute of limitation is a mere negative prescription, affording a defense, but conferring no

right which may be actively asserted, beyond the mere redress of the tenant against a *tort-feasor*.

The weight of authority in the United States seems now in favor of the doctrine that possession of land during the full period of limitation, under such circumstances as would make a valid defense, amounts to an investiture of title; which may be actively asserted, in all respects as effectively as if acquired by deed. (See cases referred to in *Wash. on R. Property, Book III, chap. 11, sec. 7, sub. sec. 48.*) This court has repeatedly approved this view of the effect of the statute. It was applied to a case of personal property in *Hicks v. Flint, 21 Ark., p. 463*—and is announced, or underlies the reasoning in *Sharp v. Johnson, 22 Ark., 79; Walker v. Towns, 23 Ark., 147; Kirby v. Vantrue et al., 26 Ark., 368; Mayo & Jones v. Cartright, 30 Ark., 407; Mooney et al. v. Coolidge, ib., 640; Farguson v. Pelin (MS.)* The continuity of possession, always insisted upon, has reference to the time during which the statute is running—and is not necessary after the bar has attached.

The demurrer should have been overruled. No question of the nature of the possession, or of color of title is presented. These may arise on issues to be made, and will not be anticipated.

Reverse the judgment of dismissal, and remand the cause for further proceedings consistent with law and this opinion.