## JOINES v. PATTERSON ET AL.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 298. Argued April 26, 1927.—Decided May 31, 1927.

1. Conclusions of a state supreme court based upon questions of federal law wrongly determined, and acted upon, require a reversal of the judgment and remand of the cause for further proceedings. P. 548.

2. Laws of Arkansas, when extended over the Indian Territory by Congress, carried with them the settled constructions placed upon them by the Arkansas courts and, so construed, became in effect laws of the United States as though originally enacted by Congress for the government of the Territory. P. 549.

3. Under § 3509 of Mansfield's Digest of the Statutes of Arkansas, as extended to the Indian Territory, a proceeding by a guardian to sell land of his Choctaw Indian wards, allotted under the Choctaw-Chickasaw Supplemental Agreement in the name of their deceased ancestor, was an original proceeding—not ancillary to that in which the guardian was appointed—and was properly begun in the United States Court for that Territory of the Judicial District in which the land was situate; and, under the Oklahoma Enabling Act, upon creation of that State, the cause was properly transferable to a county court of a county included within the former District in which it was begun and embracing in part the land, although that was not the district in which the guardian was appointed. P. 551.

4. The seven year limitation prescribed by § 4471 of Mansfield's Digest upon suits to recover land began to run from the taking of possession by one who continued in open peaceful possession for the allotted time, though claiming under void muniments. P. 553.

5. Rights of action arising in the Indian Territory before the admission of Oklahoma as a State, remained subject to the Arkansas statute of limitations. P. 554.

114 Okla. 9, reversed.

CERTIORARI (271 U. S. 638) to a judgment of the Supreme Court of Oklahoma directing a final decree for the respondents herein, in their suit to establish against the petitioner their claim of title to allotted Choctaw lands.

*Mr. William G. Davisson* for petitioner.

*Mr. W. F. Semple* was on the brief for respondents.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

This controversy concerns title to lands allotted after her death to Emma Patterson, a Choctaw Indian. Once

within the Southern Judicial District of Indian Territory, they are now in Murray, Stephens and Carter counties, Oklahoma. · By original complaint presented to the Murray County District Court, February 21, 1920, respondents here—William M. Patterson, surviving husband of Mrs. Patterson, and their five children—alleged that, although petitioner U. Sherman Joines had held actual and peaceful possession of the lands since July 5, 1907, the legal title thereto was in them. And they asked an appropriate decree establishing their rights.

Mrs. Patterson, resident of the Central Judicial District, Indian Territory, died there May 14, 1906, leaving five minor children, born, respectively, 1894, 1897, 1900, 1903 and 1905. Her surviving husband, father of these children and a white man, was appointed guardian for them by the United States Court, Central District, sitting · at Durant (now in Bryan· County, Oklahoma). Thereafter, April 24, 1907, he petitioned the United States Court for the Southern District, sitting at Ardmore (now in Carter County, Oklahoma), to sell the lands. May 2, 1907, that court authorized the sale, and on the following October 8 the guardian filed his report showing sale of them at public outcry July 5, 1907, for two thousand dollars to U. Sherman Joines, petitioner here, the highest bidder. He also stated that, acting as their guardian, he had conveyed to Joines all interest of the minors in the lands.

October 5, 1907, purporting to act as guardian, Patterson undertook by deed to convey to Joines all the minors' interest in the lands. Since then Joines has held open and adverse possession.

July 14, 1913, the County Court, Carter County, Oklahoma, after reciting its succession to the United States court sitting at Ardmore, undertook to confirm the sale made in 1907. August 5, 1913, Patterson, purporting to act as guardian, again undertook by deed to convey to ·

petitioner the minors' right, title and interest in and to the lands.  This deed recited the court proceedings during 1907 and the guardian's action thereunder, including his report of sale; also the 1913 order of confirmation by the Carter County Court.  It further stated that court was " authorized to do any and all things herein which the said United States court for the Southern District of the Indian Territory, sitting at Ardmore, could have done."

The District Court for Murray County heard the present cause without a jury upon an agreed statement of facts, and held—

That William M. Patterson acquired a life estate by curtesy in the lands which had been barred by the seven-year statute of limitations in force within Indian Territory October 5, 1907.

That by putting Joines into possession of the lands and allowing him to retain this for fourteen years without complaint Patterson estopped himself from asserting any claim thereto.

That the United States court for the Southern District of Indian Territory had jurisdiction to authorize sale by the guardian of the minors' interest and confirmation thereof by the County Court, Carter County, Oklahoma, was not void.

That the adult children and heirs are barred by the statute of limitations from asserting any claim to the lands.

An appropriate decree adjudging the issues for Joines followed.

Upon appeal, the Supreme Court of Oklahoma first upheld the trial court, but, after a rehearing, it disapproved all the above-stated conclusions, reversed the judgment and directed final decree for respondents here.  114 Okla. 9.

The Supreme Court accepted and acted upon at least two conclusions which we think are erroneous.  (1) That the proceeding in the United States court at Ard-

more to sell the lands was merely ancillary to the main
guardianship matter at Durant, in the Central District,
and therefore should have been transferred to Bryan, not
to Carter County. (2) That the Arkansas seven-year
statute of limitations—§ 4471 Mansfield's Digest—did
not commence to run against William M. Patterson and
in favor of Joines when the latter took possession, since
no interest passed to him—the court proceedings and the
guardian's deed being wholly insufficient to give even
color of title. These conclusions were based upon ques-
tions of federal law wrongly determined. They were
acted upon by the court below. We must, therefore, re-
verse its judgment and remand the cause for further pro-
ceedings. See *Whitehead* v. *Galloway*, 249 U. S. 79.

Section 30, Act of May 2, 1890, c. 182, 26 Stat. 81, 94,
as amended by the Act of March 1, 1895, c. 145, 28 Stat.
693, divided Indian Territory into three judicial dis-
tricts—Northern, Central and Southern—and defined
their limits. Section 31 extended over it certain general
laws of Arkansas as published in Mansfield's Digest.
Among these were Chapters 20, 49, 73 and 97, relating,
respectively, to the common and statute law of England,
descent and distribution, guardians, curators and wards,
and limitations.

Section 32 of the same Act provided that " county,"
in the laws of Arkansas so extended, should mean judi-
cial division (afterwards district), and " Indian Terri-
tory " might be substituted for " State of Arkansas."

Section 22, Act of Congress approved July 1, 1902,
c. 1362, 32 Stat. 641, 643—the Choctaw-Chickasaw
Supplemental Agreement—provided: " If any person
whose name appears upon the rolls, prepared as herein
provided, shall have died subsequent to the ratification
of this agreement and before receiving his allotment of
land the lands to which such person would have been
entitled if living shall be allotted in his name, and shall,

together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: *Provided,* That the allotment thus to be made shall be selected by a duly appointed administrator or executor."

When extended over Indian Territory, the specified laws of Arkansas carried the settled constructions placed upon them by courts of that State. So construed, they became, in effect, laws of the United States as though originally enacted by Congress for government of the Territory. *Willis* v. *Eastern Trust & Banking Co.,* 169 U. S. 295, 307; *James* v. *Appel,* 192 U. S. 129, 135; *Gidney* v. *Chappel,* 241 U. S. 99, 102. See also *Byrd* v. *State,* 99 Okla. 165.

Oklahoma, with boundaries including Indian Territory, came into the Union November 16, 1907. The Enabling Act, approved June 16, 1906, c. 3335, 34 Stat. 267, 277, as amended by the Act of March 4, 1907, c. 2911, 34 Stat. 1286, 1287, directed—

" Sec. 19. That the courts of original jurisdiction of such State shall be deemed to be the successor of all courts of original jurisdiction of said Territories and as such shall take and retain custody of all records, dockets, journals, and files of such courts except in causes transferred therefrom, as herein provided; the files and papers in such transferred cases shall be transferred to the proper United States circuit or district court, together with a transcript of all book entries to complete the record in such particular case so transferred.

" Sec. 20. That all causes, proceedings, and matters, civil or criminal, pending in the district courts of Oklahoma Territory, or in the United States courts in the Indian Territory, at the time said Territories become a State, not transferred to the United States circuit or district courts in the State of Oklahoma, shall be proceeded

with, held, and determined by the courts of said·State, the successors of said district courts of the Territory of Oklahoma, and the United States courts in the Indian Territory; with the right to prosecute appeals or writs of error to the supreme or appellate court of said State, and also with the same right to prosecute appeals or writs of error from the final determination in such cases made by the supreme or appellate court of such State to the Supreme Court of the United States; as is provided by law for appeals and writs of error from the supreme or final appellate court of a State to the Supreme Court of the United States."

The Constitution of Oklahoma provides—

" Section 1 ['Schedule.]. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. And all processes which may have been issued previous to the admission of the State into the Union under the authority of the Territory of Oklahoma or under the authority of the laws in force in the Indian Territory shall be as valid as if issued in the name of the State.

" Section 2. All laws in force in the Territory of Oklahoma at the time of the admission of the State into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall·be extended to and remain in force in the State of Oklahoma until they expire by their own limitation or are altered or repealed by law.

" Section 23. When this Constitution shall go into effect, the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of·administration and guardianship, and other matters pending therein, shall be transferred to the county court of such county, except of Day County, which shall be

transferred to the County Court of Ellis County, and the county courts of the respective counties shall proceed to final decree or judgment, order, or other termination in the said several matters and causes as the said probate court might have done if this Constitution had not been adopted. The District Court of any county, the successor of the United States court for the Indian Territory, in each of the counties formed in whole or in part in the Indian Territory, shall transfer to the county court of such county, all matters, proceedings, records, books, papers, and documents appertaining to all causes or proceedings relating to estates: Provided, That the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

Section 3509, Mansfield's Digest: "When it shall appear that it would be for the benefit of a ward that his real estate, or any part thereof, be sold or leased and the proceeds put on interest, or invested in productive stocks, or in other real estate, his guardian or curator may sell or lease the same accordingly upon obtaining an order for such sale or lease from the court of probate of the county in which such real estate or the greater part thereof shall be situate." Sections 3510 and 3511 prescribe the procedure for such causes.

*Reid* v. *Hart*, 45 Ark. 41, 46, 48 (1885), distinctly holds that the court of the county wherein lies real estate belonging to a ward is the proper tribunal to entertain an application for its sale by his guardian. The opinion declares: "There had, however, been provisions made for the sale of lands, on the application of administrators and executors, for the payment of debts. They were adopted early in our state history, being found in the Revised Code (Sec. 147) and remained in force until the adoption of the Civil Code of 1868. They required that the application for such an order should be made to the Probate Court of the county *in which the lands are situate*. The

Act of December 23, 1846, enlarged the scope of purposes for which such sales might be made, and associated 'guardians' with personal representatives (*ubi supra*) but made no change as to the tribunal. It may fairly be inferred that, by this association, the Legislature contemplated that guardians should conform to the same rule, and make their applications for the sale of lands in the county where they lay. . . . This is law to this day, and has been brought forward into Mansfield's Digest, Sec. 3509. This displays a system by which we endeavor to supply the omission in the act of 1846, which fails to designate the probate court meant, by reasoning from the organic unity of the whole system." And see *MaHarry* v. *Eatman*, 29 Okla. 46, 53.

Under the statute thus construed, the court for the Southern Judicial District, Indian Territory, at Ardmore had jurisdiction of the guardian's petition to sell. The cause there was not merely ancillary to the original guardianship proceeding in the Central District, wherein Patterson was appointed. It had the status of an independent suit.

The Enabling Act directed that causes pending in the United States courts for Indian Territory should be proceeded with and determined by the successor courts of Oklahoma. As we understand the opinion below, the court recognized that if the guardian's suit for sale, begun at Ardmore, was an original and independent one, transfer of it to the Carter County court for further action was proper. We think it was an original proceeding and therefore was transferred to the proper court for further action according to the rights of the parties. See *Dewalt* v. *Cline*, 35 Okla. 197, and *Bailey* v. *Jones*, 96 Okla. 56.

Joines went into open, peaceful possession of the allotted lands October 5, 1907, when the following parts of Chapter 97, Mansfield's digest, were in force—

" Section 4471. No person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed. . . .

" Section 4476. No action for the recovery of real property, when the plaintiff does not claim title to the lands, shall be brought or maintained when the plaintiff, or his testator or intestate, has been five years out of possession."

Under the settled construction given to the seven-year statute of limitations by the courts of Arkansas, it began to run against Patterson when Joines took possession. " So long as a man is in possession of land, claiming title, however wrongfully, and with whatever degree of knowledge that he has no right, so long the real owner is out of possession, in a constructive as well as an actual sense. It is of the nature of the statute of limitation, when applied to civil actions, in effect, to mature a wrong into a right, by cutting off the remedy. To warrant its application in ejectment, the books require *color of title,* by deed or other documental semblance of right in the defendant, only when the defense is founded on a *constructive adverse possession.* But neither a deed nor any equivalent muniment is necessary, where the possession is indicated by *actual occupation, and any other evidence of an adverse claim exists.* The muniment is but one circumstance by which to make out an adverse possession." *Ferguson* v. *Peden,* 33 Ark. 150, 155; *Jacks* v. *Chaffin* (1879), 34 Ark. 534, 541; *Logan* v. *Jelks, id.* 547, 549.

The Supreme Court of Oklahoma seems definitely to have approved the doctrine that rights of action arising in Indian Territory prior to statehood remained subject to the Arkansas statute of limitations. *Patterson* v. *Rousney*, 58 Okla. 185, 202; *Davis* v. *Foley*, 60 Okla. 87, 88. And see *U. S. Fidelity, etc. Co.* v. *Fidelity Trust Co.*, 49 Okla. 398, 408; *Sandlin* v. *Barker*, 95 Okla. 113, 117.

Considering our conclusions in respect of the two federal questions already dealt with and views long accepted by the court below, it seems unnecessary for us now to consider other points relied on by counsel.

*Reversed.*