**ROUBEDEAUX et al. v. QUAKER OIL & GAS CO. OF OKLAHOMA et al.**

Circuit Court of Appeals, Eighth Circuit. December 22, 1927.

No. 7797.

1. **Indians ⬥18—Land allotted to mother by Creek Nation, passing to daughter on mother's death, descended to daughter's maternal grandmother and aunts on daughter's death, rather than to surviving father (Act June 30, 1902, § 6 [32 Stat. 501]; Act March 1, 1901 [31 Stat. 861]; Mansf. Dig. Ark. § 2531; Act April 26, 1906, § 5 [34 Stat. 138]).**

Where land lawfully allotted and conveyed by Creek Nation to mother passed to daughter on mother's death, such land, on death of daughter, passed to her maternal grandmother and her maternal aunts, and not to surviving father, under Act June 30, 1902, § 6 (32 Stat. 501), providing that descent and distribution under Act March 1, 1901 (31 Stat. 861), should be in accordance with Mansf. Dig. Ark c. 49, which includes section 2531, and Act April 26, 1906, § 5 (34 Stat. 138).

2. **Quieting title ⬥12(3)—Where complainant has no adequate remedy at law, equity has jurisdiction of suit to quiet title brought against defendants in possession.**

Suit in equity may be brought to quiet title, even though defendants were in possession, where suit was to avoid deed obtained by fraud, which was recorded and created cloud on complainant's title, and made it impossible for her to maintain action of ejectment or any other adequate remedy at law.

3. **Courts ⬥299(3)—Complaint in suit to quiet title, alleging federal statutes under which complainant claimed, held to invoke federal jurisdiction, as stating federal question.**

In suit in equity to avoid deed and its record, and to have title quieted in complainant,

complaint alleging federal statutes under which complainant claimed *held* to sustain jurisdiction of federal court, on ground that federal question was involved; rule that statement of federal question cannot be aided by allegations in anticipation or avoidance of defenses being inapplicable.

4. **Indians** ⟨○⟩**18—Provision of Creek Agreement, ratified by Congress, for descent and distribution under state statute, made such state statute law of United States (Act June 30, 1902, § 6 [32 Stat. 501]; Act March 1, 1901 [31 Stat. 861]; Mansf. Ark. Dig. c. 49, § 2531).**

Section 6 of Supplemental Creek Agreement, ratified by Act June 30, 1902 (32 Stat. 501), providing that descent and distribution of land and money provided for by Act March 1, 1901 (31 Stat. 861), should be in accordance with Mansf. Ark. Dig. c. 49 (sections 2522-2545), *held* to make section 2531 thereof subject to provisions of section 6 of Supplemental Creek Agreement law of United States as much as if it had been enacted by Congress in hæc verba.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit by Lusanna Brink against the Quaker Oil & Gas Company of Oklahoma and others, in which Katie Roubedeaux and others became parties plaintiff as successors in interest to Lusanna Brink, deceased. From a judgment dismissing the bill, plaintiffs appeal. Affirmed.

Eugene B. Smith, of Sapulpa, Okl. (J. T. Smith and R. L. Wilkinson, both of Sapulpa, Okl., on the brief), for appellants.

George S. Ramsey, of Tulsa, Okl., and L. O. Lytle, of Sapulpa, Okl. (Alvin Richards, F. A. Calvert, Edgar A. De Meules, Villard Martin, J. H. Hill, John R. Ramsey, and B. W. Griffith, all of Tulsa, Okl., J. E. Thrift, C. J. Davenport, and D. A. McDougal, all of Sapulpa, Okl., T. J. Flannelly and Paul B. Mason, both of Independence, Kan., and Lewis C. Lawson, of Holdenville, Okl., on the brief), for appellees.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

WALTER H. SANBORN, Circuit Judge. Lusanna Brink, the complainant below, brought this suit in equity against the Quaker Oil & Gas Company, a corporation of Oklahoma, the Pure Oil Pipe Line Company and Pure Oil Company, corporations of the state of Ohio, and many other defendants to avoid certain deeds for their fraudulent procurement, which she alleges clouded her title to and prevented her from maintaining an action at law for about 160 acres of land in Creek county, Oklahoma, which she alleged she owned, and that the defendants were wrongfully in possession of and to quiet the title to this land in her. There were many defendants; some demurred, some answered, some made motions to dismiss, and some prayed for decrees quieting title in themselves. When all the pleadings had been completed, the facts which conditioned the decision of the controlling issue on the merits of the case were not controverted, and the interested defendants made motions on the pleadings to dismiss the bill, and these motions were granted by the court on the ground that the pleadings disclosed no equity in the plaintiff entitling her to any relief against any of the defendants. All the parties to this suit claim that their respective interests in the title and ownership of this land are derived through inheritance from Sina Crow, that she was a full-blood Creek Indian, that she had the right as such under the Creek Agreements and the pertinent acts of Congress to an allotment of land from the tribal lands of that tribe, that such an allotment was so lawfully selected and made to her, that the ownership and title to it vested in her lawful heirs, and that the land in controversy is that allotment.

Sina Crow died in August, 1899, leaving her daughter, Susie Crow, and Kernal Jack, the father of that daughter, surviving her. Susie Crow died in September, 1899, leaving her father, Kernal Jack, who died in 1903, leaving Wallace Jack, his son by the plaintiff, Lusanna Brink, and Wallace Jack died in 1913. The plaintiff, his mother, claims title by inheritance from Susie Crow through this line. On the other hand, the defendants insist that no right, title, or interest in this land was ever vested in Kernal Jack, Wallace Jack, or the plaintiff, Lusanna Brink, because under the law the title came by inheritance from Sina Crow to her daughter, Susie Crow, from her to her maternal grandmother, Fannie Fulsom, and her maternal aunts, Mollie Tiger and Babie Cumsey, under whom the defendants claim.

The question here presented is one of law, and its answer must be derived from these statutes: The Congress of the United States, by section 6 of the Act of June 30, 1902 (32 Stat. 501), the act to ratify the Creek Supplemental Agreement, provided that "the descent and distribution of land and money provided for by said act" (the Act of March 1, 1901 [31 Stat. 861], to ratify the Original Creek Agreement) "shall be in accordance with chapter 49 of Mansfield's

Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation. * * * " Sina Crow, Susie Crow, Fannie Fulsom, Mollie Tiger, Babie Cumsey, Kernal Jack, Wallace Jack, and Lusanna Brink were all Creek citizens of full blood residing in the Creek Nation.

Section 5 of the Act of Congress of April 26, 1906 (chapter 1876, 34 Stat. 138), provided: "That all patents or deeds to allottees in any of the Five Civilized Tribes to be hereafter issued shall issue in the name of the allottee, and if any such allottee shall die before such patent or deed becomes effective, the title to the lands described therein shall inure to and vest in his heirs, and in case any allottee shall die after restrictions have been removed, his property shall descend to his heirs or his lawful assigns, as if the patent or deed had issued to the allottee during his life, and all patents heretofore issued, where the allottee died before the same became effective, shall be given like effect."

Section 2531 of Mansfield's Digest provided that: "In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

[1] This land was selected as an allotment for Sina Crow in 1905. On June 8, 1906, about two months after section 5 (34 Stat. 138), above quoted, of the Act of April 26, 1906, took effect, the Department of the Interior approved the deeds of P. Porter, Principal Chief of the Creek Nation, whereby, in accordance with the provisions of the Creek Agreements and the acts of Congress, he granted and conveyed, as the deeds read, "unto said Sina Crow all right, title, and interest of the Muskogee (Creek) Nation * * * in and to" the lands which are the subject of this litigation. Here was an inheritable estate, which vested in Sina Crow and Susie Crow under section 5 of the Act of April 26, 1906 (34 Stat. 138), as if they had lived until those deeds and that estate became effective, and it came to Susie Crow

by her mother. Susie Crow left no descendants, and section 2531 of Mansfield's Digest declared that in such case the estate "shall ascend to the mother and her heirs," who were Fannie Fulsom, Mollie Tiger, and Babie Cumsey. The court below followed the opinion and decision of this court in a similar case (Shulthis v. McDougal et al., 170 F. 529), adjudged that they inherited this land from Susie Crow, and that neither Kernal Jack, Wallace Jack, nor the plaintiff ever had any right, title, or interest therein.

Counsel for the complainant ably and persistently argue, and have submitted elaborate and ingenious briefs in support of their theory, that this conclusion of the court below was a radical error of law. Their contention, as we understand it, is, first, that the proviso in section 6 of the Act of June 30, 1902 (32 Stat. 501), that only citizens of the Creek Nation and their descendants should inherit lands of the Creek Nation, made Creek parentage the first and indispensable qualification of an inheritor of Creek lands; second, that while this qualification is essential to the inheritor in the first descent, it is not essential to the inheritors in the second and subsequent descents; third, that where the source of the right of an allottee to be enrolled was the appearance of her name on the 1895 tribal roll, her Creek citizenship or ancestry was still the first qualification of an inheritor, and in second and further descents the parents of the first inheritor, Susie Crow, were the source of the estate she inherited; that she "received the lands involved herein, as preferred heir by the blood of her tribal parents, by the one as much as by the other"; and, fourth, that the tribe was the source of the estate, and that inheritors required no further qualification to inherit Creek lands than that required by the proviso of section 6 of the Act of June 30, 1902, "that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation."

From these premises counsel draw the conclusions: (1) That the qualifications of Creek ancestry and citizenship required of an inheritor was derived by Susie Crow from Kernal Jack, her father, as much as from Sina Crow, her mother; and (2) that, inasmuch as this indispensable qualification was thus derived, the inheritable land allotted and conveyed to Sina Crow and inherited by Susie Crow descended to and vested in her father, Kernal Jack, upon her death without descendants, under section 2522 of Mansfield's Digest, which declares that, "when any

person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend: * * * First. To children, or their descendants, in equal parts. Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts."

Susie Crow died intestate, without descendants, while her father, Kernal Jack, was living, and counsel for the plaintiff, Lusanna Brink, the mother of Wallace Jack, insist that he inherited the lands here in question and through him they passed to her. The briefs and authorities cited by counsel for the complainant have been read and have received thoughtful consideration, but they have failed to convince. To our minds the conclusion that the father of a Creek Indian inherits the estate his intestate child inherits from its Creek mother is not the logical or legal effect of the fact that he and her mother were parents and members of the Creek Nation, entitled to allotments of land from that nation. The fact that the child could not have inherited a Creek allotment, unless she was a descendant of Creek parents entitled to an allotment, by no means determines what property or interests in property she or her heirs may inherit. It goes no farther than to prevent her inheritance of Creek lands, if she is not a Creek or a descendant of Creeks. What she may and what she may not inherit is determined not alone by her Creek ancestry or descent, but is fixed, in case she has such ancestry or descent, by Mansfield's Digest and the acts of Congress. After as careful a consideration of this case as we are able to give it, we are unable to escape the conclusion that the land in controversy here came to Susie Crow and her heirs by her Creek mother, Sina Crow, to whom it was lawfully allotted and conveyed by the Creek Nation with the authority and approval of the United States; that Kernal Jack and those claiming under him never had any inheritable or other interest or ownership in the land here in controversy, because the acts of Congress and Mansfield's Digest determined the owners of it, and enacted that, since it came by the mother of Susie Crow, who had no descendants, it ascended to her mother, Sina Crow, and her heirs, Fannie Fulsom, Mollie Tiger, and Babie Cumsey.

[2] Counsel for some of the parties to this suit contend that this is a suit to quiet the title to this land in the complainant, and that the court below had no jurisdiction in equity to consider it, because the complainant was out of possession and the defendants were in possession of the land, and they cite Whitehead v. Shattuck, 138 U. S. 146, 151, 155, 156, 11 S. Ct. 276, 34 L. Ed. 873, and other cases of that class. But the reason why in those cases jurisdiction in equity of the federal courts was not sustained was because the complainants had adequate remedies at law. This is a suit in which the complainant had no such remedy. It is a suit in equity to avoid a deed which the complainant alleges was obtained by fraud, was recorded, created a cloud upon her title, and made it impossible for her to maintain an action of ejectment or any other adequate remedy of law. While a suit in equity to quiet title to land by a complainant out of possession may not be maintained in a federal court against a defendant in possession, so long as the complainant has a complete remedy by an action of ejectment, or any other action of law, such a suit in equity may be maintained where, as in this case, the complainant has no such remedy, and seeks by the suit to avoid a fraudulent deed or other obstacle which deprives him of his remedy at law. This was a suit in equity for such relief, and the court below had plenary jurisdiction of it in equity. Holland v. Challen, 110 U. S. 15, 21, 25, 26, 3 S. Ct. 495, 28 L. Ed. 52; Sanders v. Devereux (C. C. A.) 60 F. 311, 315; Stuart v. Union Pac. R. Co. (C. C. A.) 178 F. 753, 756; Fay v. Hill (C. C. A.) 249 F. 415, 418; Kellogg v. Schaueble (D. C.) 273 F. 1012, 1016.

[3] In her bill in equity in this case the complainant made 23 parties defendants, and alleged diversity of citizenship between herself and the great majority of these parties. She claimed that the court had jurisdiction of the other parties, because the case presented a federal question under section 24 of the Judicial Code (title 28, § 41, U. S. C. [28 USCA § 41]). Counsel for some of this class of defendants moved in the court below to dismiss the bill, on the ground that it did not allege facts sufficient to show that the suit involved an actual dispute arising under the Constitution or a law of the United States, the decision of which necessarily involved the construction and application of the Constitution or a law of the United States to the facts of this case. That motion was not granted, and counsel have argued and presented briefs in support of their theory that the failure to grant this motion was a fatal error of the trial court. ·

But this is a suit in equity, not an action

at law. In her bill the complainant pleaded the Creek Agreements, the acts of Congress which ratified them, the Act of Congress of June 30, 1902, whereby the Supplemental Creek Agreement was ratified and chapter 49 of Mansfield's Digest was applied to the determination of the descent and distribution of the lands of the Creeks, set forth her claim of title to the land in question here through Susie Crow and her father, Kernal Jack, and his son, the adverse claim of the defendants through Susie Crow and her mother, Sina Crow, and her heirs, alleged that the determination of this right to the land in controversy as against the claims of the defendants necessarily required an interpretation and application of chapter 49 of Mansfield's Digest and the acts of Congress pleaded to the facts of this case, and prayed for a decree that she was the rightful owner of the land, free from incumbrances, that the defendants had no right to it, for an accounting and recovery of the value of the oil and gas that the defendants had taken from the land, and for such other and further relief as she might be entitled to in equity.

In support of their position counsel invoke the rule that whether a case is one arising under the Constitution or a law or treaty of the United States under the jurisdictional statutes must be determined from what necessarily appears in the plaintiff's statement of her own claim in her bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose, and they cite Taylor v. Anderson, 234 U. S. 74, 75, 34 S. Ct. 724, 58 L. Ed. 1218, Scott v. First Nat. Bank of Morris (C. C. A.) 285 F. 832, 834, 835, and other cases of that class. That rule is applicable to those actions of ejectment at law and cases of that character by one claiming title and possession against a defendant wrongfully in possession, wherein the cause of action of the plaintiff is well and completely stated without setting forth the claim of the defendant. But this is a suit in equity to avoid a deed and its record, alleged to have been fraudulently obtained, to obtain a decree that the defendants' claims of right, title, and interest in the land in dispute were baseless, that the cloud of the recorded fraudulent deed be removed, that

the defendants be enjoined from claiming title to the premises, and that the title therein be forever quieted in the complainant; and it was both proper and necessary for the complainant in this case, in order to secure the relief for which she prayed, to plead her claim of title, the defendants' claim of title, the facts which rendered that claim unfounded, and the acts of Congress, whose proper interpretation and application to the facts of this case would in the complainant's view sustain her claim and entitle her to the relief she sought. Her complaint and the facts she pleaded therein were necessary, proper, and sufficient to invoke and sustain the jurisdiction of the court below of this case and of the objecting defendants on the ground that this case necessarily involved the federal question pleaded. Evans v. Durango Land & Coal Co. (C. C. A.) 80 F. 433; Hopkins v. Walker, 244 U. S. 486, 37 S. Ct. 711, 61 L. Ed. 1270; Grayson v. Harris, 267 U. S. 352, 45 S. Ct. 317, 69 L. Ed. 652; Smith v. McCullough, 270 U. S. 456, 460, 46 S. Ct. 338, 70 L. Ed. 682.

[4] Section 6 of the Supplemental Creek Agreement, which was ratified by the Act of Congress of June 30, 1902 (32 Stat. 501), provided that the descent and distribution of the land and money provided for by the act of Congress of March 1, 1901 (31 Stat. 861), "shall be in accordance with chapter 49 of Mansfield's Digest," made section 2531 of that Digest, subject to the provisos of section 6, supra, a law of the United States as much as if it had been enacted by Congress in hæc verba. Leak Glove Mfg. Co. v. Needles (C. C. A.) 69 F. 68, 69; Joines v. Patterson et al., 274 U. S. 544, 47 S. Ct. 706, 71 L. Ed. 1194. There was in this case an actual controversy between the parties involving the title and right to the possession and income of the land here in question necessarily determinable by the proper interpretation and application to the facts of this case of section 2531 of Mansfield's Digest and other laws of the United States.

The jurisdiction was conferred and the duty imposed upon the court below thus to determine that issue. It has discharged that duty without serious mistake or prejudicial error of law, and the judgment below must be and is affirmed.