Vernon ALLEN and Verzina Morris, minor children, by their mother and next friend, Verna Allen

v.

Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education & Welfare, State of Maryland, Intervening Defendant.

Robert A. JOHNSON, a minor child by his mother and next friend, Juanita E. Johnson

v.

Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education & Welfare.

Nos. 73–1095–B, B–75–462.

United States District Court, D. Maryland.

July 5, 1978.

C. Christopher Brown, Baltimore, Md., for plaintiffs.

Russell T. Baker, Jr., U. S. Atty. for D. Md., and John W. Sheldon, Asst. U. S. Atty. for D. Md., Jack Wojahowski, Dept. of Health, Ed. and Welfare, Baltimore, Md., for defendant.

Francis B. Burch, Atty. Gen. and Frederick S. Koontz, Asst. Atty. Gen., Baltimore, Md., for intervening defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Plaintiffs in these two cases are minor children born out of wedlock who seek social security benefits as children of deceased, insured wage earners. 42 U.S.C. § 402(d). They bring these actions under 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary of Health, Education and Welfare disallowing the benefits sought. This court has previously addressed these cases in an opinion issued on February 8, 1978. *See Allen v. Califano,* 452 F.Supp. 205 (D.Md.1978) (*Allen I*). Before recounting the holding in *Allen I* and addressing the remaining issue presented here, a brief review of the statutory provisions concerning benefits for children of deceased, insured individuals is necessary.

The Social Security Act (the "Act") provides that a child who meets certain age, filing and non-marriage requirements, 42 U.S.C. § 402(d)(1), and who has not been legally adopted by another, 42 U.S.C. § 402(d)(3)(B),[1] is eligible for benefits if the child was "dependent" upon the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C)(ii). A legitimate or adopted child is deemed legitimate and therefore automatically entitled to benefits under the Act. 42 U.S.C. § 402(d)(3). An illegitimate child may be deemed legitimate (and hence deemed dependent and thus entitled to benefits) if he can make one of four showings:

---

1. As stated in *Allen I*, it is assumed that plaintiff children have satisfied these age, filing and non-marriage requirements and have not been legally adopted by another.

1) That the infant is the child of a marriage rendered invalid by some legal insufficiency; [2]

2) That the deceased wage earner had a) acknowledged the infant claimant in writing as his or her son or daughter, or b) been decreed by a court to be the claimant's parent, or c) been ordered by a court to support the claimant on the basis of parenthood; [3]

3) That the deceased wage earner was actually living with or contributing to the support of the infant claimant at the time of the wage earner's death; [4]

4) That the infant would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death. [5]

In *Allen I* this court found that these plaintiffs were unable to make any of the above four showings and were, therefore, ineligible to receive benefits under the terms of the Act itself. That finding did not dispose of these cases, however, due to plaintiffs' argument that, under the facts of their respective cases, they are constitutionally entitled to benefits. This argument is founded on the contention that the state statutes incorporated by 42 U.S.C. § 416(h)(2)(A) are themselves unconstitutional and therefore cannot, consistent with the Constitution, be employed by a federal statute. For reasons fully set forth in *Allen I* it was held that the former Maryland intestacy statute, *Annotated Code of Maryland*, art. 46 § 6 (1965 Repl.Vol.), applied to the *Allen* plaintiffs and that the current Pennsylvania law of succession, *Pa.Stat. Ann.*, Title 20 § 2107, applied to the plain-

tiff in *Johnson*. [6] In accordance with the dictates of 28 U.S.C § 2403(b), this court certified to the Attorneys General of Maryland and Pennsylvania the fact that the constitutionality of the former Maryland and current Pennsylvania intestacy statutes had been drawn into question in these actions. The Attorneys General of both States were invited to intervene and file briefs in support of their respective statutes. The Attorney General of Maryland chose to accept this invitation and filed a memorandum setting forth Maryland's position. The Attorney General of Pennsylvania, on the other hand, declined the invitation, informing this court that Pennsylvania conceded the unconstitutionality of its questioned statute. In addition to certifying the constitutional issue to the Attorneys General of Maryland and Pennsylvania, this court heard oral argument from plaintiffs and defendant on April 7, 1978. Thus, these cases are now fully ripe for decision.

Resolution of the constitutional issue presented in these cases turns on two questions, both of which must be answered in the affirmative if plaintiffs are to prevail:

1. Are the former Maryland and current Pennsylvania intestacy statutes, incorporated into the Act by 42 U.S.C. § 416(h)(2)(A), unconstitutional insofar as they relate to illegitimates?

2. If the incorporated state statutes are unconstitutional, are the plaintiff children therefore entitled to benefits?

■ Essentially, the state statutes at issue here would permit an illegitimate child to inherit his deceased father's personal property only if the father had acknowledged his paternity and subsequently mar-

---

**2.** 42 U.S.C. § 416(h)(2)(B).

**3.** 42 U.S.C. § 416(h)(3)(C)(i).

**4.** 42 U.S.C. § 416(h)(3)(C)(ii).

**5.** 42 U.S.C. § 416(h)(2)(A); *Mathews v. Lucas*, 427 U.S. 495, 514 n.17, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

**6.** Charles W. Morris, the father of Vernon Allen and Verzena Morris, the *Allen* plaintiffs, died in

Maryland in 1964. Hence, under 42 U.S.C. § 416(h)(2)(A), the Maryland intestacy statute in effect at that time is determinative of the status of Allen and Morris. By the same token, Pennsylvania law controls the status of Robert Johnson, the only plaintiff in the *Johnson* case, because his father, Austin Croom, was domiciled in Pennsylvania at the time of his death in 1972.

ried the child's mother.[7] Plaintiffs contend that these statutes discriminate against illegimate children whose parents never married by treating legitimate children, and illegitimate children seeking to inherit from their mothers, in a far more advantageous manner than illegitimate children seeking to inherit from their fathers. They submit that there is no rational basis for this discriminatory classification and that it therefore violates the constitutional guarantees of due process and equal protection.[8]

The defendant, in an argument based largely on *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), takes the position that the challenged state intestate laws are not constitutionally infirm. It argues that the state's legitimate interest in preserving family structure and providing for the orderly distribution of intestate estates are furthered by the operation of the statutes at issue. It further contends that the statutes pose no insurmountable barrier to inheritance by illegitimates, since inheritance from the biological father could be insured through the execution by him of a will naming the illegitimate child as beneficiary.

The equal protection analysis to be applied to a classification based on illegitimacy has been subject to dispute over the years. It has been argued in the past that such a classification should be subjected to exacting scrutiny traditionally devoted to cases involving race [9] or national origin.[10] *Mathews v. Lucas, supra,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). This argument has been rejected. *Id.* at 506, 96 S.Ct. 2755. Despite the conclusion that a classification based on legitimacy requires less than the strictest scrutiny, *Lucas* made it clear that the scrutiny "is not a toothless one." *Id.* at 510, 96 S.Ct. 2755. In sum, courts will require that a statutory classification based on illegitimacy bear some rational relationship to a legitimate state purpose. *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Under this analysis, the statutes in question fail to pass muster.

The precedential value of *Labine v. Vincent, supra,* the decision relied on by the Secretary in support of the intestacy provisions before the court, has been questionable from its inception. *See Eskra v. Morton,* 524 F.2d 9, 13, 15 (7th Cir. 1975) (Stevens, J.); *Norton v. Weinberger,* 364 F.Supp. 1117, 1124 (D.Md.1973) (Blair, J.). The final blow to any real vitality it might have had came with the Supreme Court's recent decision in *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which had the effect of negating its operative principles.

*Labine* was an attack upon the constitutionality of Louisiana laws which barred

---

7. The Maryland statute provided:

    If any man shall have a child or children by a woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in virtue of such marriage and acknowledgment, be hereby legitimated and capable in law to inherit and transmit inheritance as if born in wedlock.

    *Annotated Code of Maryland*, art. 46, § 6 (1965 Repl.Vol.).

    The Pennsylvania statute provides:

    (a) *Child of mother.*—For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his mother but not of his father.

    (b) *Marriage of parents.*—When the parents of a person born out of wedlock shall have married each other, he shall be legitimated for purposes of descent by, from and through him as if he had been born during the wedlock of his parents.

    *Pa.Stat.Ann.* Title 20, § 2107.

8. Because these state statutes have been incorporated by federal legislation, they are, in effect, federal law *as though originally enacted* by Congress. *Joines v. Patterson,* 274 U.S. 544, 549, 47 S.Ct. 706, 71 L.Ed. 1194 (1927). Hence, they must be examined under the due process clause of the Fifth Amendment. While the Fifth Amendment does not contain an equal protection clause, courts have nevertheless utilized an equal protection type of analysis in evaluating federal legislation under the due process clause. *E. g., United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Frontiero v. Richardson,* 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

9. *See, e. g., Loving v. Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

10. *See, e. g., Oyama v. California,* 332 U.S. 633, 644–46, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

illegitimates from sharing equally with legitimates in the estate of a father dying intestate. In upholding the Louisiana scheme of intestate distribution, the Supreme Court found that the State had a legitimate interest in "promoting family life and directing the disposition of property left within the State," 401 U.S. at 536 n.6, 91 S.Ct. at 1019, and found that this interest was furthered by the statutory scheme in question. The Court also strongly emphasized that the "discrimination" was not "insurmountable" since illegitimates could inherit in Louisiana by will. 401 U.S. at 539, 91 S.Ct. 1017.

*Trimble* was concerned with the constitutionality of § 12 of the Illinois Probate Act,[11] which allowed illegitimates to inherit by intestate succession only from their mothers; legitimate children, on the other hand, were permitted to inherit by intestate succession from both their mothers and their fathers. In striking down this statute, the Court found that § 12 bore only the most attenuated relationship to the goal of promoting familial relationship. 430 U.S. at 768, 97 S.Ct. 1459. The Court did agree that the State's interest in establishing an expedient method of property disposition was both real and important. Nevertheless, in its view, the complete exclusion of illegitimates from paternal inheritance, absent marriage and acknowledgment, was too extreme a method of achieving this goal. The Court said:

> [T]he question [is] whether the statute "is carefully tuned to alternative considerations" . . . .. We conclude that § 12 does not meet this standard. Difficulties of proving paternity in some situations do not justify the total statutory disinheritance of illegitimate children whose fathers die intestate. . . . The reach

of the statute extends well beyond the asserted purposes. (citation omitted). 430 U.S. at 772–73, 97 S.Ct. at 1466.

Finally, the Court in *Trimble* disposed of the no "insurmountable barrier" reasoning on which *Labine* was largely founded. In this regard the Court stated:

> Despite its appearance in two of our opinions, the focus on the presence or absence of an insurmountable barrier is somewhat of an analytical anomaly. Here, as in *Labine*, the question is the constitutionality of a state intestate succession law that treats illegitimate children differently from legitimate children. Traditional equal protection analysis asks whether this statutory differentiation on the basis of illegitimacy is justified by the promotion of recognized state objectives. If the law cannot be sustained on this analysis, it is not clear how it can be saved by the absence of an insurmountable barrier to inheritance under other and hypothetical circumstances.

> By focusing on the steps that an intestate might have taken to assure some inheritance for his illegitimate children, the analysis loses sight of the essential question: the constitutionality of discrimination against illegitimates in a state intestate succession law. If the decedent had written a will devising property to his illegitimate child, the case no longer would involve intestate succession law at all. Similarly, if the decedent had legitimated the child by marrying the child's mother or by complying with the requirements of some other method of legitimation, the case no longer would involve discrimination against illegitimates. Hard questions cannot be avoided by a hypothetical reshuffling of the facts. If Sherman Gordon had devised his estate to Deta Mona this case would not be here. Similarly, in *Reed v. Reed*, 404 U.S. 71 [92

---

11. That section provided in relevant part:

An illegitimate child is heir of his mother and of any maternal ancestor, and of any person from whom his mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which

the parent would have taken, if living. A child who was illegitimate whose parents inter-marry and who is acknowledged by the father as the father's child is legitimate. Ill.Rev.Stat. c. 3, § 12 (1973). *See Trimble v. Gordon, supra*, 430 U.S. at 763 n.1, 764–65, 97 S.Ct. 1459.

S.Ct. 251, 30 L.Ed.2d 225] (1971), if the decedent had left a will naming an executor, the problem of the statutory preference for male administrators of estates of intestates would not have been presented. The opinion in *Reed* gives no indication that this available alternative had any constitutional significance. We think it has none in this case.

430 U.S. at 773–74, 97 S.Ct. at 1467. Clearly then, in the present view of the Supreme Court, the lack of an insurmountable barrier to inheritance by an illegitimate is constitutionally insignificant.

■ In the opinion of this court, the former Maryland and current Pennsylvania intestate distribution laws at issue here are indistinguishable from the Illinois statute addressed in *Trimble*. Like § 12, they forbid intestate inheritance by an illegitimate from his father unless the father married the child's mother and acknowledged the child as his own. This court can perceive no reason for reaching a result different from that found in *Trimble*; the statutes challenged by these plaintiffs and the Illinois statute struck down in *Trimble* are virtually identical. Accordingly, this court holds that the statutes in question in these cases violate the due process clause of the Fifth Amendment and are therefore constitutionally invalid.

Having found the incorporated state statutes unconstitutional, this court is faced with the question of whether that factor will entitle these plaintiffs to benefits. The opinion of Mr. Justice (then Circuit Judge) Stevens in the analogous case of *Eskra v. Morton*, 524 F.2d 9 (7th Cir. 1975), strongly indicates that it does. *Eskra* dealt with a federal statute which controlled the disposition of a Chippewa Indian's interest in Indian Trust Land upon her death.[12] The statute looked to the law of the state in which the land was located to determine its disposition. The applicable Wisconsin intestate succession statute denied Eskra, solely because she was born out of wedlock, the right to receive property from the collateral heir of her deceased mother. *Id.* at 11.

The *Eskra* court found the Wisconsin statute to be unconstitutional and therefore held that the federal statute incorporating its provisions was also unconstitutional as applied to the facts before it. Accordingly, it held that the plaintiff was entitled to share equally with her legitimate sisters in the estate of the deceased.

The Supreme Court itself has addressed, albeit in dicta, the question of remedy where § 416(h)(2) is found to incorporate an unconstitutional state statute. In *Mathews v. Lucas*, the Court said:

> Appellees do not suggest, and we are unwilling to assume, that discriminations against children in appellees' class in state intestacy laws is constitutionally prohibited, see *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), *in which case appellees would be made eligible for benefits under § 216(a)(2)(A)* [42 U.S.C. § 416(h)(2)(A)]. (Emphasis added).

427 U.S. at 515 n.18, 96 S.Ct. at 2767.

Defendant argues that the Act must be viewed as a whole and when so viewed is constitutional, even where, as here, 42 U.S.C. § 416(h)(2)(A) incorporates unconstitutional state provisions. Stated otherwise, defendant contends that the unconstitutionality of the incorporated state statutes is cured by the other provisions of the Act which permit illegitimate children to receive benefits where they can make one of the requisite showings described earlier. This argument is not without some appeal. Showing that state law would permit inheritance from the deceased wage earner is only one of four possible ways for an illegitimate to qualify for benefits under the Act. The invalidity of the incorporated state law does not absolutely preclude the child from benefits; it simply removes one of the four possibilities.

■ Nevertheless, this court believes that these plaintiffs are entitled to benefits, Section 416(h)(2)(A) looks to the law that would be applied by the state of the wage earner's domicile at death. In these cases

12. 25 U.S.C. §§ 348 and 464.

the state laws referred to are invalid. Thus, were the estates of the deceased fathers before the Maryland and Pennsylvania courts, those courts would be required to permit the plaintiff children to inherit by reason of the equal protection clause. So viewing the question, these children are entitled to benefits under the Act because they would take intestate under the law as it would be applied by the state court. Accordingly, they meet the statutory qualification criteria found in 42 U.S.C. § 416(h)(2)(A). Moreover, this court cannot disregard *Eskra* and the language of footnote 18 in *Lucas*. It will therefore hold that these plaintiffs are entitled to benefits as children of deceased, insured wage earners. The Secretary's decisions shall be reversed.

Accordingly, it is this 5th day of July 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the case of *Allen v. Califano* be, and the same hereby is, REVERSED.

2. That the case of *Johnson v. Califano*, be, and the same hereby is, REVERSED.