Vernon ALLEN et al.

v.

Joseph A. CALIFANO, Jr.,[1] Secretary, Department of Health, Education & Welfare.

Rodney L. WILSON, etc.

v.

Joseph A. CALIFANO, Jr.,[1] etc.

Robert A. JOHNSON, etc.

v.

Joseph A. CALIFANO, Jr.,[1] etc.

Civ. Nos. 73–1095–B, 73–1142–B and B–75–462.

United States District Court, D. Maryland.

Feb. 8, 1978.

1. Joseph A. Califano, Jr. succeeded F. David Mathews as Secretary of Health, Education and Welfare on January 25, 1977. Pursuant to 42 U.S.C. § 405(g), the appropriate substitution has been made.

C. Christopher Brown, Baltimore, Md., for plaintiffs.

Randolph W. Gaines, Chief of Litigation, Office of Gen. Counsel, Social Security Div., Dept. of Health, Education and Welfare, Washington, D. C., Jervis S. Finney, U. S. Atty. for the District of Maryland, Baltimore, Md., Virginia S. Draper, Asst. U. S. Atty. for the District of Maryland, for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

The infant plaintiffs in these three cases seek social security benefits as children of deceased, insured wage earners. 42 U.S.C. § 402(d). They seek judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), of a final decision of the Secretary of Health, Education and Welfare disallowing the benefits sought.

Because of the nature of the issues raised in these cases a brief review of the statuto-

ry scheme providing benefits to the children of deceased individuals is essential. Generally speaking, those children who meet the age, filing and non-marriage requirements of the Act, 42 U.S.C. § 402(d)(1), and who have not been legally adopted by another, 42 U.S.C. § 402(d)(3)(B),[2] are eligible for benefits if they were *dependent* upon the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C)(ii). A child is *deemed dependent* if he was (1) living with or supported by the wage earner at the time of his death, or (2) is *the legitimate child* of the wage earner. 42 U.S.C. § 402(d)(3). If a child is *illegitimate,* he may nonetheless be *deemed legitimate* for purposes of the Act (and hence deemed dependent and thus entitled to benefits) if he can make one of four showings:[3]

1) That the infant would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death,[4]

2) That the deceased wage earner and the other parent of the infant went through a marriage ceremony rendered invalid by some legal insufficiency,[5]

3) That the deceased wage earner had a) acknowledged the infant claimant in writing as his or her son or daughter or b) been decreed by a court to be the claimant's parent, or c) been ordered by a court to support the claimant on the basis of parenthood,[6]

2. Throughout this opinion, it is assumed that the applicant children have satisfied age, filing and marital requirements and have not been legally adopted by another.

3. The fact that illegitimate children must make a special showing not required of legitimate children in order to receive benefits under the Act has been expressly sanctioned by the Supreme Court. *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). The concept underlying the benefits to children at stake in this case is that children actually dependent on insured wage earners should receive benefits if the insured dies. Legitimates are presumed dependent; illegitimates must demonstrate their dependency. In *Lucas* the Court held that this distinction is "reasonably related to the likelihood of dependency at death," *id.* at 509, 96 S.Ct. at 2764, and that while those legitimates who are not in fact dependent may get benefits nonetheless, no illegitimate who is dependent will be denied benefits. In other words, no illegitimate will be denied benefits solely because of his illegitimacy; there is thus no invidious discrimination and no violation of the Equal Protection Clause.

4. In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any

State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.
42 U.S.C. § 416(h)(2)(A).

That an infant qualifying under this section as a child is to be considered a legitimate child, and therefore dependent under 42 U.S.C. § 402(d)(3), has been established by the Supreme Court. *Mathews v. Lucas,* 427 U.S. 495, 514 n.17, 96 S.Ct. 275, 49 L.Ed.2d 651 (1976).

5. If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.
42 U.S.C. § 416(h)(2)(B).

6. An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection [notes 4 & 5, *supra* ] shall nevertheless be deemed to be the child of such insured individual if:
(c) In the case of a deceased individual—
(i) such insured individual—
(I) had acknowledged in writing that the applicant is his son or daughter,
(II) had been decreed by a court to be the father of the applicant, or

4) That the deceased wage earner was actually living with or contributing to the support of the infant claimant at the time of the wage earner's death.[7]

■ Plaintiffs, all minor children born out of wedlock, contend that the Secretary erred as a matter of law in finding them ineligible for benefits. They argue first that current Maryland law [8] should be applied to their cases and that under that law they are legitimate and therefore entitled to benefits due to the presumption of dependency found in 42 U.S.C. § 402(d)(3). *See Massey v. Weinberger,* 397 F.Supp. 817 (D.Md.1975). This contention is without merit. The choice of law rule applicable to child benefit cases is found in 42 U.S.C. § 416(h)(2)(A):

> In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual was domiciled . . . at the time of his death . . . .

Regulations promulgated by the Secretary serve to further define what law applies in determining the status of a child:

> [The] relationship is determined by "applicable State law." By this is meant the law the court of the State of the domicile of such insured individual would apply in deciding who is a . . . child of such individual, when determining the devolu-

tion of such individual's intestate personal property. The domicile of such insured individual, if deceased, is determined as of the date of his death.

20 C.F.R. 404.1101(a).

In the instant cases two of the deceased wage earners died outside the State of Maryland. Clifton Berry, Jr., the alleged father of plaintiff Wilson, died in Mississippi in 1971 (Wilson R. 39); Austin Croom, the father of plaintiff Johnson, died in Pennsylvania in 1972 (Johnson R. 126). Accordingly, this court is bound by the above quoted choice of law provisions to look first to the laws of Mississippi and Pennsylvania to determine the status of Wilson and Johnson, respectively. As to plaintiffs Vernon Allen and Verzena Morris,[9] their father, Charles W. Morris, died in Maryland in 1964 (Allen R. 47–50, 56). However, at that time the applicable Maryland law was *Annotated Code of Maryland,* Art. 46, § 6, a provision substantially different from its successor, *Annotated Code of Maryland,* Est. & Trusts Art., § 1–208, which did not go into effect until January 1, 1970. *See Annotated Code of Maryland,* Art. 93, § 12–101 (1969 Repl. Vol.). While both of these provisions are discussed in more detail below, at this time it is sufficient to say that the *Allen* plaintiffs would not be considered legitimate under Art. 46, § 6. Because that was the applicable law in the domicile of their father's death at the time of his death, it is the appropriate law to be applied by this court. Therefore, the first argument of plaintiffs in all three cases, i. e., that the

---

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter, and such acknowledgement, court decree, or court order was made before the death of such insured individual.
42 U.S.C. § 416(h)(3)(C)(i).

7. An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection [notes 2 & 3, *supra* ] shall nevertheless be deemed to be the child of such insured individual if:
 (c) In the case of a deceased individual—

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.
42 U.S.C. § 416(h)(3)(C)(ii).

8. The Maryland provision referred to is *Annotated Code of Maryland,* Estates and Trusts Art., § 1–208(b). Under this section a child is deemed legitimate if the father has openly and notoriously recognized the child as his own. Section 1–208 is discussed more fully *infra.*

9. Vernon Allen and Verzena Morris are both plaintiffs in the *Allen* case.

children should be considered legitimate under current Maryland law, must be rejected for the reason that current Maryland law is not applicable unless it would be employed by the courts in the State of the fathers' domicile at death.[10]

Plaintiffs set forth a number of additional arguments which require full development of the facts in each of the three cases. Hence, these arguments are addressed separately below.

### Wilson v. Califano

In 1971 Ethel G. Wilson filed an application for child insurance benefits for her son, plaintiff Rodney Wilson, on the wage record of Clifton Berry, Jr., a fully insured individual for social security purposes. (Wilson R. 27–30, 38). Her initial claim was denied as was her request for reconsideration. (Wilson R. 33–36). On October 17, 1972 she filed a request for a hearing before an Administrative Law Judge (ALJ) which was held on February 26, 1973. (Wilson R. 13–14). On March 19, 1973, the ALJ rendered his decision, finding, *inter alia,* that Ms. Wilson had not satisfied her burden of establishing Clifton Berry's paternity of her son. (Wilson R. 9). Refusal by the Appeal Council to alter this decision (Wilson R. 3) rendered it the final decision of the Secretary. On November 21, 1973, plaintiff filed the present action in this court.

■ The function of this court on review is to determine whether, based on the entire record, the agency's decision is supported by substantial evidence. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972); 42 U.S.C. § 405(g). Substantial evidence means, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is more than

a scintilla but less than a preponderance and must be based on the record as a whole. *Blalock v. Richardson, supra* at 776. It is also a function of the court to determine whether the Secretary applied the correct legal standards, *Knox v. Finch,* 427 F.2d 919, 920 (5th Cir. 1970), and whether his conclusions have a reasonable basis in law. *Hicks v. Gardner,* 393 F.2d 299, 302 (4th Cir. 1968).

Preliminarily, the court notes that plaintiff's mother proceeded below without benefit of counsel. As a consequence, an extremely meager record was developed. For example, the transcript of the entire hearing before the ALJ is a mere 11 pages in length. Notwithstanding this, certain matters are clear. The wage earner was found by a Maryland court to be the father of Ms. Wilson's first child, Donald Wilson, and was required to support him. (Wilson R. 23, 45–46). Ms. Wilson also filed a petition for support of Rodney, which named the wage earner as the father; this petition was filed on August 21, 1963, before Rodney was born. (Wilson R. 23, 51). According to Ms. Wilson, the wage earner admitted paternity of Rodney, as yet unborn, at some type of hearing[11] in January of 1964. (Wilson R. 54–55, 58–59). However, before any action could be taken on the paternity petition relating to Rodney, Berry had left the State. (Wilson R. 23, 54–55). As a result, no disposition was had on the petition. In any event, there are numerous statements in the record by Ms. Wilson asserting that Berry was the father of Rodney. (Wilson R. 28, 29, 51, 55, 58, 61). The record also contains written statements from Clotee Stewart, sister of the wage earner, and Carolyn Eddington, niece of the wage earner, stating that he had indicated to them that he was the father of Rodney.[12] (Wilson R. 62–64). Additionally, Rodney's birth

---

10. The argument that the States of Mississippi and Pennsylvania would look to Maryland law in determining the status of plaintiffs Wilson and Johnson has been raised. This contention is analyzed *infra.*

11. It is possible that this hearing related to the paternity of Donald. This would be in keeping

with the timing of the decree for the support of Donald, which was issued on January 27, 1964. (Wilson R. 45–46).

12. These statements appear to be in the handwriting of the same person.

certificate lists Berry as the father. (R. 56). There is no evidence in the record that Berry was not Rodney's father. In light of these factors, it cannot be said that the ALJ's finding that Berry had not been shown to be Rodney's father is supported by substantial evidence. Nor does the government seriously so contend. Therefore, for purposes of this review it must be assumed that Rodney was the child of Clifton Berry and Ethel Wilson.

Because Rodney was born out of wedlock (Wilson R. 21), his biological relationship to the wage earner will avail him nothing at this stage of the proceeding unless he can show that he is entitled to benefits under one of the four showings required of illegitimates as discussed above. Unquestionably, Berry and Ms. Wilson did not go through a marriage ceremony rendered invalid by some legal insufficiency. It is also conceded by plaintiff that Berry did not live with or support Rodney at the time of his death. Moreover, it is clear from the record that Berry did not acknowledge Rodney in writing as his son, was not decreed by a court to be Rodney's parent and was not ordered by a court to support Rodney. Hence, Rodney can be eligible for benefits only if he would be entitled to inherit personal property from Berry under the law that would be applied to determining the devolution of intestate personal property by the courts of Berry's State of domicile at death.

As mentioned earlier, Berry died domiciled in Mississippi on October 11, 1971. (Wilson R. 39). Under the intestate succession law of Mississippi an illegitimate may inherit only from his mother unless he is acknowledged by his father *and* his parents marry. 20 *Miss.Code Ann.* § 91–1–15.[13] It is not enough, however, for this court to look at the intestate succession law of Mississippi. Under the choice of law formula provided by 42 U.S.C. § 416(h)(2)(A), the court must "apply such law as would be applied . . . by the courts of the State in which such insured individual is domiciled . . . at the time of his death." Accordingly, the court must turn initially to the whole law of Mississippi, including its choice-of-law rules as well as its local substantive provisions. *See Perez v. Gardner,* 277 F.Supp. 985, 989 (E.D.Wis. 1967).

 Under the whole law of the State of Mississippi, the status of a child, for inheritance purposes, is determined by reference to the law of the State of his birth. *Smith v. Kelly's Heirs,* 23 Miss. 167, 170 (1851). In this respect Mississippi follows the general rule that the "personal law" of the child is dispositive of the child's status. *See generally,* Annot. 87 A.L.R. 1274, 1280 (1963). As shown by the *Smith* case, Mississippi interprets the "personal law" of the child as the law of the child's place of birth. Defendant's argument that the legitimation laws of another state may not serve to legitimate a child for inheritance purposes in Mississippi does not withstand a close reading of *Thomas v. Thomas,* 200 Miss. 96, 25 So.2d 710 (1946), the case relied on in support of that argument. In *Thomas,* the Supreme Court of Mississippi found that the alleged child of the deceased Will Thomas was not entitled to share in his estate. The basis of this decision was *not* that foreign law cannot be used to legitimate a child; rather it was based on a finding that the appellee child was not in fact the biological child of the deceased. Moreover, the court found that, even assuming paternity, the child would not be legitimate under the law of Mississippi or the law of Louisiana (the other relevant jurisdiction). Finally, the *Thomas* court did not overturn *Smith v. Kelly's Heirs, supra;* to the contrary it cited *Smith* with approval. *Thomas,* 25 So.2d at 710. In sum then, Mississippi would look to the law of the child's place of birth to determine its status. Because Rodney Wilson was born in Mary-

---

**13.** Section 91–1–15 provides in pertinent part:
 If any man beget a child or children by a woman whom he shall afterward marry, such child or children, if acknowledged by the man, shall, in virtue of such marriage and acknowledgement, be legitimate and capable in law to inherit and transmit inheritance as if born in wedlock. All illegitimates shall inherit from their mother . . . ..

land (Wilson R. 56–57), its law is the proper one to apply in his case.

■ *Annotated Code of Maryland,* Est. & Trusts Art., § 1–208 (hereinafter referred to as § 1–208) provides:

(a) *Child of his mother.*—A child born to parents who have not participated in a marriage ceremony with each other shall be considered to be the child of his mother.

(b) *Child of his father.*—A child born to parents who have not participated in a marriage ceremony with each other shall be considered to be the child of his father only if the father

(1) Has been judicially determined to be the father in an action brought under the statutes relating to paternity proceedings; or

(2) Has acknowledged himself, in writing, to be the father; or

(3) *Has openly and notoriously recognized the child to be his child;* or

(4) Has subsequently married the mother and has acknowledged himself, orally or in writing, to be the father. (emphasis added).

Maryland decisions have consistently held that this section, although contained in an inheritance statute, is not limited in scope and application to matters of inheritance only but instead is more in the nature of a general legitimating statute. *See, e. g., Dawson v. Eversberg,* 257 Md. 308, 262 A.2d 729, 732–33 (1970); *Thomas v. Solis,* 263 Md. 536, 283 A.2d 777, 780 (1971); *cf. State v. Rawlings,* 38 Md.App. 479, 381 A.2d 708 (1978). This conclusion finds support in *Annotated Code of Maryland,* Cts. & Jud.Proc., § 3–602, which provides:

(a) *Jurisdiction of courts of equity.*—A court of equity has jurisdiction over the custody, guardianship, legitimation, main-tenance, visitation and support of a child In exercising its jurisdiction, the court may:

. . . . .

(2) Determine the legitimacy of a child, pursuant to § 1–208 of the Estates and Trusts Article of this Code.

Furthermore, two judges of this court have held that a child meeting the requirements of § 1–208 will be held legitimate for purposes of the Social Security Act and hence entitled to benefits. *See Massey v. Weinberger,* 397 F.Supp. 817, 820 (D.Md.1975); *Johnson v. Weinberger,* Civil No. N–74–531, slip op. at 7 (D.Md.1975). Therefore, if Rodney Wilson was "openly and notoriously" recognized by the wage earner as his child, in accordance with § 1–208(b)(3), he is considered legitimate under Maryland law, at least for purposes of receiving benefits under the Act. If he is so considered, he will be entitled to benefits, under 42 U.S.C. § 402(d)(3), as a legitimate child.[14]

■ Because the Secretary failed to consider whether Rodney Wilson was legitimate under Maryland law, the case will be remanded for further administrative proceedings. On remand the necessary fact findings will be: (1) whether Rodney Wilson is the biological child of Clifton Berry, Jr., and (2) if Rodney Wilson is found to be the biological child of Clifton Berry, Jr., whether Berry "openly and notoriously" recognized Rodney as his child. If the answer to both of these questions is in the affirmative, Rodney shall be entitled to benefits. For the benefit of the Secretary on remand, the court notes that it is unnecessary for Rodney to show that all of Berry's acts of open and notorious recognition, if any in fact occurred, took place after January 1, 1970, the effective date of

---

**14.** An alternate mode of reasoning leads to the same result. If Wilson is found to be legitimate under Maryland law, he would be able to inherit from his father in Mississippi. If he could inherit from his father in Mississippi, he would satisfy one of the additional showings required of illegitimates under the Act—that contained in 42 U.S.C. § 416(h)(2). *See* note 4 *supra.*

Having satisfied this inheritance requirement, he would be qualified for benefits as an illegitimate making one of the necessary statutory showings. *See Mathews v. Lucas,* 427 U.S. 495, 514 n. 17, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Jimenez v. Weinberger,* 417 U.S. 628, 631 n. 2, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).

§ 1–208.[15] It will be sufficient if, as in *Massey v. Weinberger, supra,* Berry took actions of open and notorious recognition which straddled the January 1, 1970 effective date of § 1–208.

### Allen v. Califano

In 1969, Verna Allen filed on behalf of her two minor children, Vernon Allen and Verzena Morris an application for child's insurance benefits based on the earnings record of Charles W. Morris (Allen R. 47–50), to whom she was never married and who died domiciled in Maryland in December 1964 (Allen R. 56). Her claim was denied originally on November 21, 1969 (Allen R. 51–52), and was also denied upon reconsideration (Allen R. 54–55). Ms. Allen filed a request for hearing on October 30, 1972 (Allen R. 21), which was held on March 5, 1973 (Allen R. 23). On April 5, 1973, the ALJ rendered his decision finding:

1. That Charles W. Morris, deceased, was the father of Vernon Allen, born March 23, 1963, and Verzena C. Morris, born March 8, 1965.

2. That before his death, Charles W. Morris, never acknowledged in writing that he was the father of either of the children and that he was never decreed by a court to be the father of either child or ordered to contribute to their or either of their support.

3. That it has not been shown by satisfactory evidence that Charles W. Morris was living with or contributing to the support of the children involved or either of them.

(Allen R. 12). In accordance with these findings, the ALJ denied benefits to the two children. His decision became the final decision of the Secretary when the Appeals Council denied Ms. Allen's request for review. (Allen R. 2). The present action was commenced in this court on November 7, 1973.

■ Plaintiffs Allen and Morris argue that the Secretary's decision that they were not eligible for benefits under the "living with or contributing to [their] support" provision of 42 U.S.C. § 416(h)(3)(C)(ii)[16] was erroneous and is not supported by substantial evidence. In essence, they contend that the Secretary applied incorrect legal standards to the evidence and that the application of correct legal standards would produce a different result. They submit that the Secretary employed the wrong test for "support" in requiring the wage earner father's contributions to be both regular and substantial. They further allege that the "living with" requirement was met in that the wage earner spent weekends with Ms. Allen and the children.[17]

■ The courts have been nearly unanimous in holding that the test in determining the "support" requirement is whether the contributions, if any, are regular and substantial.[18] *Lucas v. Secretary, Dept. of Health, Education and Welfare,* 390 F.Supp. 1310, 1313 (D.R.I.1975), *rev'd on other grounds,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *Kasey v. Richardson,* 331 F.Supp. 580, 586 (W.D.Va.1971); *Turley*

15. It is clear that a statute may be prospectively applied by resort to antecedent facts. *See, e. g., Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922); *Reynolds v. United States,* 292 U.S. 443, 449, 54 S.Ct. 628, 78 L.Ed. 1474 (1934); *United States v. Jacobs,* 306 U.S. 363, 367 (1939). To do so does not render a statute retroactive. Defendant here does not argue against the use of antecedent facts to establish legitimacy under the current Maryland statute.

16. *See* note 7, *supra.*

17. Verzena Morris was born on March 8, 1965, subsequent to the death of the wage earner on December 17, 1964. (Allen R. 56, 58). However, if he was "living with" Ms. Allen at the time she was pregnant with Verzena, the child

would be entitled to benefits despite her posthumous birth. *See Wagner v. Finch,* 413 F.2d 267, 268–69 (5th Cir. 1969).

18. Such a construction seems both reasonable and liberal towards the child. It disregards occasional gifts and minor contributions at irregular intervals, but if the contributions are regular, whether voluntary or involuntary and constitute a material factor in the child's support, even though not the principal factor, it seems necessary to hold that the parent was contributing to the support of the child. *Carey v. Social Security Board,* 62 F.Supp. 458 at 460 (W.D.Ky.1945).

*v. Cohen,* 325 F.Supp. 1067, 1070 (S.D.W.Va. 1971); *Carey v. Social Security Board,* 62 F.Supp. 458, 459–60 (W.D.Ky.1945); *cf. Norton v. Richardson,* 352 F.Supp. 596, 600–01 (D.Md.1972) (Blair, J.); *but see, Johnson v. Finch,* 350 F.Supp. 945, 948 (N.D.Tex. 1972). The ALJ properly applied this standard in making his determination, and the only question for the court is whether his decision that the contributions at issue were not regular and substantial is supported by substantial evidence.

The evidence of support is the testimony of Verna Allen and her cousin, Judy Williams, a welfare case worker, that the deceased wage earner regularly gave money and occasionally bought clothes for plaintiff Vernon Allen. (Allen R. 28). Additionally, Ms. Williams testified that Morris had purchased diapers for the then unborn Verzena Morris. (Allen R. 29). The record reveals that the ALJ affirmatively evaluated this evidence but rejected it in favor of evidence to the contrary.[19] The evidence to the contrary found persuasive by the ALJ was that Verna Allen had brought a support action against the wage earner which she abandoned when she learned that he was sick. (Allen R. 11, 59–60). The clear inference, relied on by the ALJ, is that the deceased was not in fact supporting his son. Moreover, in a statement filed with the Social Security Administration on December 17, 1965, one year after the wage earner's death, Verna Allen expressly denied that the deceased wage earner had *ever* contributed to the support of either child. (Allen R. 60). Although Allen testified before the ALJ that this statement was not true and that she filed it only to preserve her welfare payments on behalf of the children (Allen R. 33–34), the court notes three considerations: (1) the 1965 statement was made in the face of a criminal penalty for making a false statement, (2) the statement not only declares that the deceased never contributed, but that Ms. Allen understood they could not therefore qualify for benefits, and (3) Ms. Allen's first claim that the deceased did support Vernon was not made until 1969.[20] Lastly, there were several inconsistencies in Ms. Allen's various statements about how much support the wage earner had contributed, inconsistencies which she found difficult to explain or reconcile. (Allen R. 42–45). Based on these factors and the record as a whole, this court holds that there very clearly was substantial evidence to support the Secretary's decision that the deceased wage earner did not contribute regularly and substantially to the support of the minor plaintiffs.

Plaintiffs' allegation that they fall within the "living with" requirement deserves little comment. Their contention that spending weekends together on a regular, or even semi-regular basis, can be sufficient to constitute "living with" is of doubtful validity. Nevertheless, plaintiffs fail to satisfy even this requirement. Ms. Allen stated below that the wage earner, "spent nights at my house" (Allen R. 41), and "spent *several* weekends at my house" (Allen R. 41). Several weekends and an uncertain number of nights do not add up to "living together" under any definition of the phrase. Moreover, both Ms. Allen and her attorney conceded that she and the wage earner were not living together. (Allen R. 42). Accordingly, this court finds that the decision of the Secretary that the wage earner and Ms. Allen were not "living together" is unquestionably supported by substantial evidence.

Plaintiffs next argue that *Annotated Code of Maryland,* Est. and Trusts Art., § 1–208 (discussed above), should be given a retroactive application, thereby allowing them to achieve the status of legitimacy by showing that the wage earner

---

19. "Resolution of conflicts in the evidence . . . is a function solely within the province of the Secretary as the trier of the facts." *Celani v. Weinberger,* 393 F.Supp. 804, 810 (D.Md.1975). *See also Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

20. Whether any investigation or other action was taken for this admitted falsity is not apparent.

"openly and notoriously" recognized them as his children. This argument is based on the contention that § 1–208 is procedural and not substantive. This court disagrees. As plaintiffs concede, it is a standard rule of statutory application that a newly enacted statute which affects substantive rights will generally not be given retroactive effect. *Beechwood Coal v. Lucas*, 215 Md. 248, 137 A.2d 680, 682–83 (1958). Hardly can it be said that the changes brought about by the enactment of § 1–208 were merely procedural. This section created entirely new rights in children who had no such rights before its enactment.[21] It is these rights themselves which are new, and the change therefore is clearly substantive.

Moreover, the legislature provided effective dates for the 1969 amendments:

§ 12–101. Effective date.

The effective date of this article shall be 12:01 a. m. on January 1, 1970. (1969, ch. 3, § 1.)

§ 12–102. Applicability.

Unless otherwise specifically provided in another section of another subtitle of this article, the provisions of this article shall apply as follows:

(a) Subtitles I [which includes § 1–208], III, V, VI, VII, VIII, IX and X shall apply to the estates of decedents dying on or after January 1, 1970.

*Annotated Code of Maryland*, art. 93, §§ 12–101, 102 (1969 Repl. Vol.). These sections indicate clearly that the legislature did not intend § 1–208 to be retroactively applied.

Finally, retroactive application of § 1–208 may have the effect of reopening closed estates to the detriment of persons whose inheritances would be reduced by such reopening. Such a result would run counter to the state's interest in settling estates as promptly and efficiently as possible and could not have been the intent of the legislature. This court concludes, therefore,

that § 1–208 should not be retroactively applied.

Plaintiffs' final argument is that the Social Security Act's incorporation of the former Maryland intestacy law[22] is violative of the Fifth Amendment guarantees of due process and equal protection in that the incorporated provision is unconstitutional. The constitutional question will be dealt with *infra*.

### Johnson v. Califano

Juanita Johnson filed an application on behalf of Robert A. Johnson for child insurance benefits based on the earnings record of Austin Croom in August of 1973. (Johnson R. 113–16). The application was denied initially and also denied upon reconsideration. (Johnson R. 117, 119–22). A hearing before an ALJ was held on October 22, 1974 (Johnson R. 24). On November 6, 1974, the ALJ rendered his decision finding that Robert was not entitled to benefits under the Act. (Johnson R. 11–14). In a supplemental decision, he did conclude that Robert was the natural son of the wage earner, Austin Croom. (Johnson R. 7–8). Plaintiff's request for review by the Appeals Council was denied on February 24, 1975, thereby making the ALJ's decision the final decision of the Secretary. (Johnson R. 3). The instant suit was filed on April 14, 1975.

The record indicates that Ms. Johnson first met Austin Croom in 1960, when she was fifteen years old. Both were living in Philadelphia at the time. (Johnson R. 34). Robert was born in Philadelphia on August 19, 1962. (Johnson R. 130). Ms. Johnson stated that she saw Mr. Croom twice a week after the child was born and that she married another man, Earl Morris, when the child was one month old. (Johnson R. 40). She lived with Earl Morris for several months, during which time Croom allegedly gave her $5 to $15 a week for the child. (Johnson R. 64). When Robert was two or three months old, Ms. Johnson left her hus-

---

21. Prior to the statutory amendment evidenced by § 1–208, an illegitimate could only be legitimated by subsequent marriage of his parents and acknowledgment by the father. *See Anno-*

*tated Code of Maryland*, art. 46, § 6 (1965 Repl. Vol.).

22. *Annotated Code of Maryland*, art. 46, § 6 (1965 Repl. Vol.).

band and moved with Austin Croom to Paterson, New Jersey, where they lived together with the child for approximately two years. (Johnson R. 45). During that time the wage earner supported the child and its mother. (Johnson R. 65–66). After Ms. Johnson discovered that the wage earner was seeing another woman, she left New Jersey and returned to Philadelphia with Robert. (Johnson R. 48). Later the wage earner also returned to Philadelphia and continued to visit Ms. Johnson and Robert. (Johnson R. 51, 54). In 1969, Ms. Johnson moved to Baltimore with her son. (Johnson R. 61–62). After she moved, she did not see Austin Croom again. (Johnson R. 61). Austin Croom died in Philadelphia in 1972. (Johnson R. 126). As indicated in the record, the wage earner "always acknowledged Robert as his son to many of his friends as well as to his parents." (Johnson R. 121).

As in the *Wilson* case, plaintiff here asserts that the applicable law is that of Maryland because Pennsylvania, the State of the wage earner's domicile at death, would look to Maryland law to determine his status. This argument is without merit under the facts of this case.

■ An examination of relevant Pennsylvania case law demonstrates that, in appropriate circumstances, Pennsylvania courts will look to the law of another jurisdiction to determine the status of a child. In *George Estate*, 4 Pa.D. & C.2d 334 (1955), the child whose status was in question was born in Ohio, the product of a bigamous marriage. Under Ohio law the child was considered legitimate. The Pennsylvania court determined that the law of Ohio, the place of birth, was applicable in determining the child's status and therefore she was deemed legitimate and held entitled to share in the proceeds of the disputed estate. Quoting from *Thorne's Estate*, 353 Pa. 603, 611, 46 A.2d 253, 262 (1946), the court said, "the status of legitimacy is created by the law of the domicile of the parent whose

relationship to the child is in question." The court indicated that the domicile of that parent at the time of the birth of the child was to provide the applicable law.

■ *Scalabrelli's Estate*, Pa., 59 D. & C. 434 (1947), is a case similar to the present action in its factual basis. There the decedent, whose estate was in dispute, had left Italy in 1914, moving to Pennsylvania where he remained until his death in 1942. Prior to coming to this country he had two illegitimate children in Italy. While in this country he executed an affidavit acknowledging these two children as his own. Under Italian law the effect of this acknowledgment was to legitimate the children. The court held that the father's acknowledgment did not serve to legitimate the children because at the time of acknowledgment he was domiciled in Pennsylvania; hence Pennsylvania law, not Italian law, was to be used to determine the children's status. Similarly, in the present case the alleged legitimating act—open and notorious recognition of the child pursuant to § 1–208(b)—took place in Pennsylvania not Maryland. In fact, the record indicates that the wage earner never saw the child after the child came to Maryland. (Johnson R. 61). Therefore, as in *Scalabrelli's Estate*, Pennsylvania law would be employed by the courts of that State in determining the status of Robert Johnson.

Plaintiff's final argument is similar to that set forth by the *Allen* plaintiffs, i. e., that the incorporated Pennsylvania intestacy statute [23] is unconstitutional. These arguments will be treated in the next section.

### Constitutional Arguments

■ Plaintiffs in the *Allen* and *Johnson* cases argue that the Social Security Act's incorporation of the former Maryland [24] and current Pennsylvania [25] intestacy statutes, as they relate to illegitimates, is violative of the Fifth Amendment guaran-

**23.** *Pa.C.Stat.Ann.* Title 20, § 2107.

**24.** *Annotated Code of Maryland*, art. 46, § 6 (1965 Repl. Vol.).

**25.** *Pa.C.Stat.Ann.*, Title 20, § 2107.

tees of due process and equal protection,[26] in that the incorporated provisions are themselves unconstitutional. It would appear that the State statutes challenged here are indistinguishable from the Illinois provision [27] which was held unconstitutional in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). However, before addressing the constitutional issues posed herein this court is bound by 28 U.S.C. § 2403(b) to give the States of Maryland and Pennsylvania an opportunity to present argument in support of the constitutionality of their challenged statutes. As a result, an order shall be certified to the Attorneys General of Maryland and Pennsylvania informing them that the constitutionality of the former Maryland and current Pennsylvania intestacy statutes have been drawn into question in these actions. The States of Maryland and Pennsylvania shall be given thirty (30) days from the date of that Order to intervene in these actions and file briefs in support of their respective positions should they desire to do so. Additionally, copies of this Memorandum and Order along with the relevant pleadings previously submitted by the parties to these actions shall be sent to the Attorneys General of Maryland and Pennsylvania. Oral argument on the constitutional issues here presented will be heard by this court on Friday, March 31, 1978, at 9:00 a. m. Plaintiffs shall have ten (10) days to respond to any briefs filed on behalf of Maryland or Pennsylvania.

Accordingly, it is this 8th day of February, 1978, by the United States District Court for the District of Maryland, ORDERED: [28]

1. That the case of *Wilson v. Califano* be, and the same hereby is, remanded for further proceedings not inconsistent with this opinion.

2. That plaintiffs' Motion for Summary Judgment in *Allen v. Califano* be, and the same hereby is, DENIED insofar as said motion is based on non-constitutional grounds.

3. That plaintiff's Motion for Summary Judgment in *Johnson v. Califano* be, and the same hereby is, DENIED insofar as said motion is based on non-constitutional grounds.

4. That an appropriate order shall be entered separately and sent to the Attorneys General of Maryland and Pennsylvania, informing them that the constitutionality of a Maryland and a Pennsylvania statute have been drawn into question in these proceedings and allowing Maryland and Pennsylvania thirty (30) days to intervene should they desire to do so. They shall also be sent a copy of this Memorandum and Order and all relevant pleadings previously filed in these cases.

---

**26.** While the Fifth Amendment does not contain an equal protection clause, courts have nevertheless utilized an equal protection type of analysis in evaluating federal legislation under the due process clause of the Fifth Amendment. *E. g., United States Department of Agriculture v. Moreno*, 413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Frontiero v. Richardson*, 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). When a state law is incorporated by federal legislation, it became, in effect, federal law as though originally enacted by Congress. *Joines v. Patterson*, 274 U.S. 544, 549, 47 S.Ct. 706, 71 L.Ed. 1194 (1927).

**27.** *Ill.Rev.Stat.*, c. 3, § 12 (1973).

**28.** Oral argument has not been held on the questions discussed in this Memorandum and Order, the court being of the opinion that such argument was unnecessary. Local Rule 6.